UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BETANIA TORIBIO, Administratix
of the Estate of JOHN JOAQUIN
TORIBIO, Deceased; and BETANIA
TORIBIO, Individually

       Plaintiffs,

   v.

PINE HAVEN, LLC, d/b/a PINE
HAVEN CAMPGROUND and PINE HAVEN
CAMPING RESORT; and DIVERSIFIED
INVESTMENTS, INC. a/k/a
DIVERSIFIED INVESTMENTS, LLC
a/k/a DIVERSIFIED INVESTMENT
SERVICES LLC,

       Defendants / Third
       Party Plaintiffs,

   v.

HEATHER MILLER a/k/a HEATHER
DIOSCON; TIMOTHY MILLER;
ANTHONY DIOSCON; and MICHELLE
WHEELER,

       Third Party
       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-4975
(JEI/JS)

**OPINION**

**APPEARANCES:**

LAW OFFICE OF TERKOWITZ & HERMESMANN
By:  Patrick J. Hermesmann, Esq.
309 Fellowship Road
Suite 200
Mount Laurel, New Jersey 08540
    Counsel for Defendants / Third Party Plaintiffs Pine Haven,
    LLC & Diversified Investments, Inc.

1

HOAGLAND, LONGO, MORAN, DUNST & DUKAS, LLP
By:  John C. Simons, Esq.
40 Paterson Street
P.O. Box 480
New Brunswick, New Jersey 08903
     Counsel for Third Party Defendant Michelle Wheeler

**IRENAS**, Senior District Judge:

Plaintiff Betania Toribio ("Betania") brings this wrongful death suit on behalf of her son, decedent John Toribio ("John"), and in her individual capacity.  Following the filing of Betania's Complaint, Defendants Pine Haven, LLC, and Pine Haven Holdings, LLC,[1] filed an Answer and Third Party Complaint, alleging that Third Party Defendant Michelle Wheeler ("Wheeler"), among other Third Party Defendants, shared liability in John Toribio's death, and the Defendants were therefore entitled to indemnification from Wheeler.

Currently pending before the Court is Wheeler's Motion for Summary Judgment, which seeks judgment in her favor on the counts of negligence and indemnification asserted against her.[2] Her motion is unopposed.  For the reasons explained herein, her motion will be granted.

---

[1] In their Answer and Third Party Complaint, Defendants / Third Party Plaintiffs indicate that the proper names for Defendants are: Pine Haven, LLC and Pine Haven Holdings, LLC, rather than the names used in the Caption to the Plaintiffs' original pleadings.  Throughout this Opinion, the Court will use the amended names for the Defendants / Third Party Plaintiffs.

[2] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

**I.**

The Court recounts only the facts necessary for deciding Michelle Wheeler's pending motion.

The events giving rise to this suit occurred at Pine Haven Campground in Ocean View, New Jersey.  (T.P.D.S.O.M.F. ¶ 1)[3]  The campground is owned and operated by the Defendants / Third Party Plaintiffs, Pine Haven, LLC and Pine Haven Holdings, LLC. (Third Party Compl. ¶ 1)

On August 8, 2010, fourteen year-old Michelle Wheeler traveled to the Pine Haven Campground with her family and an unnamed minor friend to visit for the afternoon and evening with Wheeler's cousins, the Sharps.  (Michelle Wheeler Dep., Nov. 25, 2013, at 15:15-16:15; Wheeler Answers to Interrog. at ¶ 2) Shortly after arriving around 4:00 p.m., Wheeler went swimming in the lake at Pine Haven Campground for approximately twenty minutes with her mother, brother, friend, and two cousins. (Wheeler Answers to Interrog. at ¶ 2)  After swimming, Wheeler, her friend, and one of her cousins walked over to the basketball courts at Pine Haven Campground.  (Wheeler Dep. at 18:7-19:19)

Upon arriving at the basketball court, Wheeler met the decedent, fourteen year-old John Toribio, and Third Party Defendant Anthony Dioscon ("Dioscon"), a friend and classmate of

---

[3] Reference to "T.P.D.S.O.M.F." is to the Third-Party Defendant's Statement of Material Facts.

John Toribio.  (Wheeler Answers to Interrog. at ¶ 2)  This was
the first time that Wheeler met either John or Dioscon, and the
group spent between twenty and thirty minutes talking on the
basketball court.  (Id.; Anthony Dioscon Dep., Oct. 15, 2013, at
75:15-77:5; Wheeler Dep. at 20:23-21:25)  After spending time
talking at the basketball court, Wheeler, her friend, John, and
Dioscon began heading back towards the lake while Wheeler's
cousin remained behind at the basketball court.  (Wheeler Dep.
at 21:4-25; Dioscon Dep. at 75:20-77:1)

Once they arrived at the lake, Wheeler, her unnamed minor
friend, John, and Dioscon initially stood on the edge of the
lake talking.  (Wheeler Dep. at 23:3-7)  According to her
deposition testimony, Wheeler suggested that they swim in the
lake, and upon her suggestion, three of the teenagers --
Wheeler, Dioscon, and John -- elected to go swimming.  (Id. at
23:9-13, 24:14-22; Dioscon Dep. at 76:21-77:1)

After entering the water to swim, but still near the shore,
the three teens began splashing water near one another.
(Dioscon Dep. at 107:1-14)  Following a few moments of
splashing, the three began to swim out towards the middle of the
lake, with Dioscon and Wheeler talking together and swimming in
front of John.  (Wheeler Dep. at 30:2-5)  Dioscon and Miller
swam together, all the while ahead of John, for approximately

4

two minutes before they reached almost the exact middle of the lake.  (<u>Id.</u>; Dioscon Dep. at 110:13-111:2)

Just as Wheeler and Dioscon reached the middle of the lake, Wheeler turned 180 degrees to see John flailing his arms a few feet behind her, and then heard John call out "help."  (Wheeler Dep. at 30:4-20; Dioscon Dep. at 106:10-21)  As they both observed John behind them "splashing around" and "flailing his arms up and down," Wheeler asked Dioscon if John was alright.  (Dioscon Dep. at 106:10-15; Wheeler Dep. at 30:4-10)  Dioscon told Wheeler "Yeah, I think so," and, as he watched John, Dioscon believed that John "was in control of everything[, h]e looked like he was just out there messing around."  (Dioscon Dep. at 106:16-21)  Wheeler accepted Dioscon's response, believing that John was kidding around when he called out for help.  (Wheeler Dep. at 31:2-4)  Wheeler and Dioscon then turned back away from John, swimming to the opposite side of the lake for approximately two more minutes without turning around until they reached the opposite shore.  (<u>Id.</u> at 32:12-33:15)

Upon arriving at the shore, Wheeler and Dioscon turned and looked back across the lake but failed to see John in the water.  (<u>Id.</u> at 33:17-20; Dioscon Dep. at 113:11-114:1)  Wheeler asked Dioscon where John had gone, and Dioscon responded that he thought John might have left the lake on his own.  (Wheeler Dep. at 33:17-20; Dioscon Dep. at 113:13-22)  Wheeler and Dioscon

began walking the perimeter of the lake to see if they could
find John's belongings, believing that John would have picked
them up if he had gotten out of the water while Wheeler and
Dioscon swam across the lake without him.  (Wheeler Dep. at
33:20-21; Dioscon Dep. at 113:22-114:1)

    After walking back around the lake and arriving near where
they first entered the water, Wheeler and Dioscon came across
John's belongings.  (Dioscon Dep. at 113:25-114:1)  After this
discovery, they walked back to the basketball courts to ask if
anyone had seen John recently.  (Wheeler Dep. 33:20-23; Dioscon
Dep. at 113:25-114:1)  When no one answered affirmatively,
Wheeler and Dioscon recruited approximately eight to ten other
teenagers to search for John around the perimeter of the lake.
(Wheeler Dep. at 37:12-38:6)  The group spent approximately an
hour searching for John with no success.  (Id.)

    After finding no sign of John after the search, Wheeler
went to alert her parents that John was missing.  (Id. at 38:8-
10)  Shortly thereafter, at approximately 10:30 p.m., New Jersey
State Police responded to the Pine Haven Campground facility
following a report from Dioscon's mother regarding John's
possible drowning.  (New Jersey State Police Investigation Rep.
A050-2010-00700 at 1)  Divers recovered John's body from the
lake approximately thirty-five feet from the shore in fifteen

feet of water, and John was pronounced deceased at the scene at 1:42 a.m.  (Id. at 4)

Plaintiff Betania Toribio, individually and as administrator for John's estate, brought this suit seeking recovery for John's wrongful death by filing a Complaint in this Court on August 8, 2012.  On January 30, 2013, Defendants Pine Haven, LLC and Pine Haven Holdings, LLC, filed an Answer and Third Party Complaint.  In their Third Party Complaint, the Defendants contend that Third Party Defendant Michelle Wheeler is liable for negligence (Count One) and owes indemnification (Count Two) to the Defendants / Third Party Plaintiffs. Following discovery, Wheeler moved for summary judgment in her favor on March 28, 2014, seeking dismiss the Third Party Complaint asserted against her.  Her motion is unopposed.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of

material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

### III.

Defendants / Third Party Plaintiffs seek contribution and indemnification from Wheeler, asserting in their Third Party Complaint that Wheeler was negligent in the drowning death of decedent John Toribio.  The Court first addresses the claim for negligence before turning to the related indemnification claim.

### A.

The essential elements of a negligence claim are: (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff proximately caused by the breach, and (4) damages.  *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014).  "The issues of whether a defendant owes a legal duty to another and the scope of that duty are

8

generally questions of law for the court to decide." *Id.* (citing *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (1996)).

As a general matter, the common law imposes "'no independent duty of rescue at all' and relieves a bystander from any obligation to provide affirmative aid or emergency assistance, even if the bystander has the ability to help." *Podias v. Mairs*, 394 N.J. Super. 338, 347 (App. Div. 2007) (quoting *Praet v. Borough of Sayreville*, 218 N.J. Super 218, 224 (App. Div. 1987)). However, certain relationships, whether rooted in a "contractual, relational or transactional" beginning, may give rise to the existence of a duty between two parties.[4] *Podias*, 394 N.J. Super. at 347-48 (quoting *Praet*, 218 N.J. at 224). More commonly, the duty determination involves a factual analysis that considers several factors, but ultimately, "[f]oreseeability of the risk of harm is the foundational element in the determination of whether a duty exists," a determination that is "based on the defendant's knowledge of the risk of injury." *Id.* at 350 (alteration in original) (quoting *J.S. v. R.T.H.*, 155 N.J. 330, 337 (1998)).

---

[4] Specific relationships, often referred to as special relationships, generally impose a duty of care and break from the general rule that there is no independent duty of rescue. *See*, *e.g.*, *Del Tufo v. Township of Old Bridge*, 147 N.J. 90, 100 (1996) (holding law enforcement officers have a duty to provide emergency care to arrestee or inmate in their custody); *see also* Restatement (Second) of Torts § 314A (1965).

Here, there is no basis to conclude that Wheeler could foresee John Toribio's risk of injury by swimming in the Pine Haven Campground lake.  The undisputed record reflects that Wheeler met John approximately thirty minutes before his death on August 8, 2010.  Though Wheeler initially suggested that the small group of teenagers should go swimming, given their limited interaction, Wheeler could not foresee that John would struggle to swim on his own and ultimately drown in the same lake that Wheeler swam in with her family earlier that day.[5]  In other words, there is no basis to conclude that Wheeler and John, over the course of their thirty minutes of conversation before his death, entered into some kind of special relationship due to the foreseeability of a risk of injury that might therefore give rise to a duty of care.  As a result, Wheeler owed no duty to John and therefore is not liable under principles of negligence.

**B.**

In Count Two, Pine Haven, LLC and Pine Haven Holdings, LLC, seek indemnification from Wheeler.  Indemnity is defined as:

> A duty to make good any loss, damage, or liability incurred by another. . . . Reimbursement or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable

---

[5] Indeed, the record reflects that Wheeler had no knowledge of whether John was a capable swimmer or not.  (See Wheeler Dep. at 25:3)

10

> for reimbursement of expenditures paid to a
> third party for injuries resulting from a
> violation of a common-law duty.

BLACK'S LAW DICTIONARY 837 (9th ed. 2009); *see also Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F.Supp. 2d 317, 327-29 (D.N.J. 2013).

Having determined *supra* that Wheeler bears no tort liability in this matter, and considering that there is no evidence of any other basis for Wheeler to assume any liability of Pine Haven, LLC or Pine Haven Holdings, LLC, the Court will also grant summary judgment in Wheeler's favor on Count Two.

## IV.

In light of the foregoing, Third Party Defendant Michelle Wheeler's Motion for Summary Judgment will be granted. In accordance with the determination that Wheeler is not liable for tortious acts, the Court will dismiss Wheeler's two crossclaims seeking contribution under N.J.S.A. 2A:53A-3 as moot because Wheeler is not a tortfeasor eligible for recovery from a joint tortfeasor. An appropriate Order accompanies this Opinion.

Date: 5-15-14

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

11